IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

TED E. WOLFRAM,

        Plaintiff,

  v.

MICHAEL J. AS TRUE,
Commissioner of Social Security,

        Defendant.

_____/

No. C 07-05432 WHA

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

## INTRODUCTION

In this social security action, plaintiff appeals his denial of disability benefits. This order finds that the administrative law judge exercised proper discretion in weighing the testimony on record and that his conclusion was supported by substantial evidence. Accordingly, plaintiff's motion for summary judgment is **DENIED**. Defendant's cross-motion for summary judgment is **GRANTED**.

## STATEMENT

### 1.    PROCEDURAL HISTORY.

On April 27, 2005, plaintiff Ted Wolfram applied for disability insurance benefits, alleging he was unable to work due to irritable bowel syndrome ("IBS"), diverticulosis, and hypertension (AR 90–96). His application was denied both initially and upon reconsideration (*id.* at 46–47). An administrative hearing was timely requested (*id.* at 42–45).

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1    On November 29, 2005, plaintiff had a hearing before ALJ Donald Rector

2    (*id.* at 309–62). The ALJ rendered a decision on February 24, 2006, finding that plaintiff was

3    not disabled (*id.* at 26–34). Plaintiff requested administrative review (*id.* at 5–14).

4    The Appeals Council denied the request (*ibid.*). Plaintiff filed this action on March 28, 2008,

5    seeking judicial review pursuant to 42 U.S.C. 405(g). The parties now make cross-motions for

6    summary judgment.

7         **2.    TESTIMONY AT THE ADMINISTRATIVE HEARING.**

8         At the hearing before the ALJ, plaintiff testified that he suffered from IBS,

9    diverticulosis, and hypertension. He testified that his condition worsened in 2000, when he

10   began to suffer from sporadic outbreaks of incontinence. The IBS and diverticulosis also

11   caused severe cramping, which was exacerbated by work-related stress. Plaintiff testified that

12   he often needed to go outside or to the bathroom while at work to relieve himself of gas.

13   In early 2004, plaintiff became unable to perform various functions at work — namely,

14   field work, overtime, and travel. Plaintiff testified that his condition also caused him anxiety.

15   At the time of the hearing, he had completed two, eight-week stress management programs at

16   Kaiser Permanente. He was also meeting with a psychologist on a monthly basis and taking a

17   meditation class.

18       Plaintiff testified that he spent his entire career as an insurance adjuster for Allstate.

19   He started as a casualty adjuster and moved into the fraud unit in 1995, where he worked

20   until 2004. Because of his inability to perform tasks required for his position, Allstate gave him

21   three options: (i) doing field work against his doctor's advice; (ii) accepting an entry-level job;

22   or (iii) taking a leave of absence. Plaintiff did not want to resume field work or accept an

23   entry-level job and thus decided to take the leave of absence. Because he needed medical

24   benefits, plaintiff filed a disability claim and went on permanent disability leave.

25       **3.    MEDICAL EVIDENCE.**

26       The medical evidence was summarized in the ALJ's decision (*id.* at 30–32). This order

27   will also briefly review both plaintiff's self-reported symptoms and the findings of each

28   physician who examined him.

United States District Court

For the Northern District of California

1    Plaintiff received treatment at Kaiser Permanente beginning in October 1997

2    (*id.* at 172).  In 2000, diagnostic tests revealed numerous diverticula in plaintiff's colon.

3    He was diagnosed with IBS, diverticulosis, and hypertension.  Plaintiff was prescribed with

4    Effexor in 2000 to treat his anxiety and depression.  He was prescribed with Triamterene and

5    Atenolol in 2001 for his high blood pressure (*id.* at 137).

6    In June 2004, plaintiff began counseling for anxiety. (*id.* at 19).  In June 2005, Dr. Philip

7    Becker, a psychologist, diagnosed plaintiff with occupational problems and an "adjustment

8    disorder with anxious mood" (*id.* at 131).  He found that work conditions (*i.e.* stress)

9    exacerbated plaintiff's IBS symptoms.  Dr. Becker deemed plaintiff's condition permanent

10   and concluded that plaintiff could not work in any field involving stress (*id.* at 132).

11   Plaintiff was also treated by internal medicine specialist Dr. Helga Johannessen.

12   In August 2004, Dr. Johannessen wrote that plaintiff's condition was especially symptomatic

13   during stressful situations and that he was unable to perform substantial work. (*id.* at 171).

14   With respect to hypertension, Dr. Johannessen diagnosed plaintiff with "white coat syndrome."

15   That is, plaintiff's blood pressure appeared normal at home (*e.g.*, 125/73) but much higher in

16   stressful environments such as work (*e.g.* 150/100) (*id.* at 164).  Dr. Johannessen determined

17   that plaintiff could not cope with the ongoing stress of his job and placed him on permanent

18   disability (*id.* at 166).  Dr. Johannessen later added hyperarousability to plaintiff's diagnosis

19   (*id.* at 152).  He noted that because even low stress could aggravate plaintiff's condition,

20   plaintiff was unable to work in any job involving stress (*ibid.*).

21   Plaintiff also received treatment from gastroenterologist Dr. Jeffrey Radigan.

22   In April 2005, Dr. Radigan listed plaintiff's symptoms as including diarrhea, abdominal cramps,

23   bloating, and fecal incontinence due to rectal urgency (*id.* at 149).  He agreed with

24   Dr. Johannessen's prognosis, finding that progression of plaintiff's symptoms had resulted in a

25   permanent disability (*id.* at 163).

26   In January 2005, examining physicians found that plaintiff was not permanently

27   disabled.  According to these physicians, plaintiff did not have job-aggravated IBS flares nor

28   did he have white-coat hypertension.  Plaintiff received a psychological evaluation from

3

**United States District Court**
For the Northern District of California

1   Dr. April Young, also in January (*id.* at 253).  Dr. Young performed various tests on plaintiff

2   and diagnosed him with an adjustment disorder with anxiety (*id.* at 254).  She concluded that

3   plaintiff's ability to perform a one- or two-step simple repetitive task was moderately impaired,

4   as were his abilities to perform detailed and complex tasks (*id.* at 256).  In March, Dr. Craig

5   Smith psychologically evaluated plaintiff, also diagnosing him with anxiety (*id.* at 258).

6   He noted, however, that plaintiff did not exhibit significant anxiety during the evaluation and

7   could probably perform work activities (*id.* at 288).

8                                  **ANALYSIS**

9       **1.    LEGAL STANDARD.**

10          A decision denying disability benefits must be upheld if it is supported by substantial

11  evidence and free of legal error.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

12  Substantial evidence is "more than a scintilla" but "less than a preponderance."  *Smolen v.*

13  *Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).  It means "such relevant evidence as a reasonable

14  mind might accept as adequate to support a conclusion."  *Ibid.*  The Court must "review the

15  administrative record as a whole, weighing both the evidence that supports and that which

16  detracts from the ALJ's conclusion."  *Andrews*, 53 F.3d at 1039.  "The ALJ is responsible for

17  determining credibility, resolving conflicts in medical testimony, and for resolving

18  ambiguities."  Thus, where the evidence is susceptible to more than one rational interpretation,

19  the decision of the ALJ must be upheld.  *Ibid.*

20          The claimant has the burden of proving disability.  *Id.* at 1040.  Disability claims are

21  evaluated using a five-step inquiry.  20 C.F.R. 404.1520.  In the first four steps, the ALJ

22  must determine:  (i) whether the claimant is working; (ii) the medical severity and duration of

23  the claimant's impairment; (iii) whether the disability meets any of those listed in Appendix 1,

24  Subpart P, Regulations No. 4; and (iv) whether the claimant is capable of performing his or her

25  previous job; step five involves a determination of whether the claimant is capable of making an

26  adjustment to other work.  20 C.F.R. 404.1520(a)(4)(i)–(v).  In step five, "the burden shifts to

27  the Secretary to show that the claimant can engage in other types of substantial gainful work

28  that exists in the national economy."  *Andrews*, 53 F.3d at 1040.  If the ALJ chooses to use a

1    vocational expert, hypothetical questions asked "must 'set out all of the claimant's

2    impairments.'"  *Lewis v. Apfel*, 236 F.3d 503, 517 (9th Cir. 2001).

3        The use of the Medical-Vocation Guidelines at step five is proper "where they

4    *completely and accurately* represent a claimant's limitations" and the claimant can "perform the

5    *full* range of jobs in a given category."  *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999)

6    (emphasis in original).  Although "the fact that a non-exertional limitation is alleged does not

7    automatically preclude application of the grids," the ALJ must first determine whether the

8    "claimant's non-exertional limitations significantly limit the range of work permitted by his

9    exertional limitations."  *Id.* at 1102.

10        **2.    THE ALJ'S FIVE-STEP ANALYSIS.**

11        In his decision, the ALJ found at step one of the sequential evaluation process that

12    plaintiff had not performed disqualifying work since his disability onset date (AR 30).

13    At step two, the ALJ found that plaintiff suffered from medically determinable impairments,

14    diagnosed as IBS, diverticulosis, and hypertension.  The ALJ deemed these impairments

15    "severe" (*ibid.*).  The ALJ did not, however, make a similar finding with respect to plaintiff's

16    anxiety  (*id.* at 31).  At step three, the ALJ found that plaintiff's IBS and diverticulosis did not

17    meet nor were medically equivalent to any impairments listed in Appendix 1, Subpart P,

18    Regulations No. 4.  IBS is not a listed impairment, nor is diverticulosis.  The ALJ found that

19    plaintiff's hypertension did not meet or equal the criteria of Listing Section 4.03 (*ibid.*).

20    Turning to step four, the ALJ first determined plaintiff's residual functional capacity (*id.* at 32).

21    Based on the medical evidence, the ALJ found that plaintiff retained the capacity for a wide

22    range of exertional activities but could not perform jobs with high-stress levels.  The ALJ

23    agreed with the vocational expert that plaintiff's RFC precluded him from returning to his past

24    work, which he characterized as high-stress (*ibid.*).  Nonetheless, at step five the ALJ found that

25    plaintiff was able to perform other jobs that existed in significant numbers in the national and

26    local economies (*id.* at 33).  The ALJ thus concluded that plaintiff was not disabled at any time

27    from July 13, 2004, through February 24, 2006.

28

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

1    Plaintiff now argues that the ALJ erred in four respects:  (i) his findings at step two of

2  the five-step analysis were not supported by substantial evidence; (ii) his rejection of medical

3  opinions from examining physicians; (iii) his discounting of plaintiff's symptom reporting; and

4  (iv) his finding that defendant met its burden of proof in step five.

5    **3.    THE ALJ DID NOT ERR IN HIS DECISION TO DENY BENEFITS.**

6    For the following reasons, this order finds that the ALJ did not err in his decision to

7  deny benefits.

8    **A.    The ALJ Did Not Err in His Finding at Step Two.**

9    Plaintiff argues that the ALJ erred in finding that plaintiff's anxiety was not a severe

10  impairment.  Contrary to several medical opinions, the ALJ viewed plaintiff's anxiety as a

11  "feature" of his IBS rather than an impairment in and of itself (AR 31).  The ALJ need not

12  accept a physician's opinion, regardless of whether that opinion is contradicted.  *See Batson v.*

13  *Comm'r of Soc. Sec.*, 359 F.3d 1190, 1194–95 (9th Cir. 2004).  Without deciding whether the

14  ALJ's finding was legal error, it could only have prejudiced plaintiff in step three or step five,

15  as the other steps (including this one) were resolved in his favor.  *See Burch v. Barnhart*,

16  400 F.3d 676 (9th Cir. 2005).  Plaintiff does not challenge the ALJ's listing determinations in

17  step three.  Moreover, because the ALJ found that anxiety was a feature of plaintiff's IBS

18  (a severe impairment), he properly accounted for anxiety in step five (AR 340).  In making a

19  determination of disability, "the ALJ must consider the 'combined effect' of all the claimant's

20  impairments without regard to whether any such impairment, if considered separately, would be

21  of sufficient severity.  *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003).

22  The ALJ explicitly stated that he "believe[d] the statements of the claimant's treaters and his

23  wife that he does not handle stress well and that it affects his IBS so severely that it precludes

24  him from performing stressful work" (AR 32).  Accordingly, the ALJ confined his step-five

25  analysis to low-stress jobs.  Plaintiff was not, therefore, prejudiced by the ALJ's step-two

26  finding with respect to anxiety.

27    Plaintiff also argues that the ALJ failed to acknowledge evidence that plaintiff's IBS

28  was worsening.  Because the ALJ determined that plaintiff's IBS was severe, whether he

considered a worsening trend is irrelevant. The ALJ's step-two finding as to IBS was favorable to plaintiff. In short, plaintiff was not prejudiced by the ALJ's finding at step two. The ALJ did not, therefore, commit reversible error.

**B.    The ALJ Did Not Err in His Evaluation of Medical Opinions.**

The ALJ did not err in his evaluation of conflicting medical opinions as to plaintiff's residual functional capacity for low-stress work. Where there is a conflict between the opinions of a treating physician and an examining physician, the ALJ may reject the treating physician's opinion if he makes findings setting forth "specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

In March 2005, treating physician Dr. Johannessen opined that even low stress could aggravate plaintiff's condition, rendering him unable to perform any job involving stress (AR 152). Around this time, examining physicians, however, found that plaintiff did not suffer from a severe impairment and could still perform work-related activities (*id.* at 288). The ALJ's finding rested between these two extremes, concluding that plaintiff had severe impairments that limited his ability to perform *some* work-related functions (*id.* at 32). He noted that plaintiff's activities of daily living — volunteer work in particular — indicated that he could perform a wide range of activities as long as he stays close to a bathroom.

Plaintiff argues that the ALJ improperly rejected opinions from treating physicians. He specifically alleges that the ALJ's weighing of daily activities was erroneous. In formulating a finding as to disability, an ALJ may in fact consider a plaintiff's daily activities. *See Mayes v. Massanari*, 276 F.3d 453, 461 (9th Cir. 2001) (holding that a plaintiff's testimony that she could do many daily activities suggested she could do work). Here, plaintiff's list of daily activities supported the findings of examining physicians and gave the ALJ a legitimate reason to reject the diagnoses of the treating physicians. This order holds that the ALJ's consideration of plaintiff's daily activities was proper and that the ALJ's conclusion was supported by substantial evidence.

**United States District Court**
For the Northern District of California

1

### C.    The ALJ Did Not Err in His Evaluation of Plaintiff's Credibility.

2     The ALJ did not err in his evaluation of plaintiff's credibility.  The ALJ must give

3  specific, clear and convincing reasons for rejecting a plaintiff's allegations of disabling

4  symptoms.  *Thomas v. Barnhart*, 278 F.3d 947, 959–60 (9th Cir. 2002).  The ALJ is responsible

5  for determinations of credibility; thus, where the evidence is susceptible to more than one

6  rational interpretation, the decision of the ALJ must be upheld.  *Andrews*, 53 F.3d at 1039.

7     Plaintiff argues that had the ALJ failed to make detailed findings with respect to

8  plaintiff's testimony and written statements regarding his symptoms.  In interpreting the

9  evidence and developing the record, however, the ALJ does not need to discuss every piece of

10  evidence.  *Howard ex rel. Wolff v. Barnhart*, 341 F.3d at 1012.

11     Plaintiff also argues that had the ALJ accredited statements by plaintiff and his wife,

12  he would have found plaintiff permanently disabled.  He assumes that all statements not

13  expressly mentioned in the ALJ's findings were tacitly rejected.  This is not necessarily so.

14  The ALJ did *not* in fact discredit plaintiff's reported condition or the severity thereof:  "There is

15  no question the claimant has suffered from irritable bowel syndrome and diverticulosis for

16  many years . . . [T]he claimant's medical records document the severity of his condition"

17  (AR 31).  Moreover, the ALJ "believe[d] the statements of the claimant's treaters and his wife

18  that he does not handle stress well and that it affects his IBS so severely that it precludes him

19  from performing stressful work" (*id.* at 32).  The ALJ also properly acknowledged plaintiff's

20  daily activities, as reported by him and his wife.  Furthermore, the ALJ credited the statement of

21  plaintiff's wife regarding plaintiff's bathroom needs.  Accordingly, he restricted his step-five

22  inquiry to jobs where the plaintiff would have access to a bathroom every three to four

23  hours (*ibid.*).  Plaintiff's testimony was consistent with that of his wife and his treaters (*see id.*

24  at 317–36).

25     The main point of disagreement between plaintiff and the ALJ was whether plaintiff's

26  condition precludes him from performance of *all* work.  The decision regarding disability,

27  however, is an administrative finding that the ALJ is entitled to make.  20 C.F.R. 404.1527(e).

28  For the above-stated reasons, the ALJ's credibility finding did not constitute legal error.

8

**D.     The ALJ Did Not Err in His Finding at Step Five.**

Plaintiff argues that defendant did not meet his burden in step five of the five-step analysis.  Specifically, he maintains that the hypothetical question posed to the vocational expert did not adequately specify or calibrate episodic interference as to frequency or amount of time spent in cramping discomfort and in evacuating his bowels.  This order disagrees.

In hypotheticals posed to a vocational expert, the ALJ must only include those limitations supported by substantial evidence.  *Robbins v. Social Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006).  Here, the ALJ's hypothetical included all of the limitations that the ALJ found credible and supported by substantial evidence in the record — namely, plaintiff's IBS, diverticulosis, hypertension, and anxiety (AR 340).  The ALJ also noted in his hypothetical that plaintiff's cramping and need to evacuate his bowels is frequent and unpredictable (*ibid*).  While the ALJ's hypothetical was not a model of precision, it did cover *all* of plaintiff's named limitations and referred to the interruptions associated therewith.  Plaintiff cites no authority stating that a lack of exact calibration as to interferences stemming from a plaintiff's limitations constitutes reversible error.

Because of the vocational expert's familiarity with IBS and the ALJ's reference to unpredictable interruptions, the vocational expert confined his inquiry to jobs allowing frequent access to restrooms (*id.* at 341).  Even so, the vocational expert identified nearly one million jobs existing in the national economy (and 84,100 in California) which accommodated plaintiff's limitations (*ibid*).

In questioning the vocational expert, plaintiff's counsel *did* establish that a condition requiring bathroom breaks of three to four times per eight-hour day, and up to fifteen minutes or more each time, would make adequate job performance highly unlikely (*id.* at 346).  This frequency of interference, however, was not supported by the substantial evidence.  In fact, the ALJ relied on the testimony of plaintiff's wife in determining that plaintiff required access to a restroom every three to four hours — a scenario substantially different from the hypothetical posed by plaintiff's counsel (*id.* at 32).  In sum, this order finds that the

1    hypothetical posed by the ALJ to the vocational expert adequately reflected plaintiff's

2    limitations, as supported by substantial evidence.

3                                   **CONCLUSION**

4          For the foregoing reasons, plaintiff's motion for summary judgment is **DENIED**.

5    Defendant's cross-motion for summary judgment is **GRANTED**.  Judgment will be entered

6    accordingly.

7

8          **IT IS SO ORDERED.**

9

10   Dated:  August 1, 2008.

11                                                    WILLIAM ALSUP
                                                     UNITED STATES DISTRICT JUDGE

**United States District Court**
For the Northern District of California